UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DIANA OSIPSOV,

    Plaintiff,

Case No 1:19-CV-

v.                                    Hon.

BEHAVIORAL RESOURCES AND INSTITUTE
FOR NEUROPSYCHOLOGICAL SERVICES, PLC,
a/k/a BRAINS,

    Defendant.
_____

Eugenie B. Eardley (P48615)
Nicholas F. X. Gumina (P74203)
Eardley Law Offices, P.C.
Counsel for Plaintiffs
8 East Bridge Street, Suite B
Rockford, MI 49341
(616) 874-2647
genieb@eardleylaw.com
nickg@eardleylaw.com

## PARTIES

1. Plaintiff, Diana Osipsov (hereinafter Plaintiff), is a female, resident of Ottawa County, Michigan.

2. Plaintiff has been employed as a clinical therapist with Defendant, Behavioral Resources And Institute For Neuropsychological Services, PLC, aka known as BRAINS, (hereinafter Defendant BRAINS) a mental health therapy clinic located in Kent County, Grand Rapids, Michigan, since 2015, to the present.

3. Defendant BRAINS does business in the State of Michigan and is an employer as defined

1

under The Americans with Disabilities Act, 42 U.S.C § 12101, et seq and the Michigan Persons with Disabilities Civil Rights Act, M.C.L. 37.1201(b)

4. Plaintiff filed a timely complaint with the EEOC, and charge was issued in April of 2019.

5. A Right to Sue Letter was sent out on August 21, 2019, and received on August 26, 2019, so suit may now be filed.

## JURISDICTION

6. Plaintiff alleges violations of the Americans with Disabilities Act of 1990, as amended in 2008. Therefore, this Honorable Court possesses subject matter jurisdiction.

7. This Honorable Court possesses supplemental jurisdiction over plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

8. Plaintiff filed a complaint with the EEOC, and a Charge was issued in Case No. 471-2018-02181 **(Attached as Exhibit 1, and fully incorporated herein)** which was processed by the agency.

9. A Right to Sue Letter was issued on August 21, 2019, and received on August 26, 2019.**(Attached as Exhibit 2, and fully incorporated herein )**

## FACTS

10. Plaintiff is a licensed clinical therapist and has been employed by Defendant from July 2015 to the present.

11. Plaintiff is credentialled as a LMSW and sees and counsels clients/patients at the Defendant's location at 3292 N. Evergreen Drive, NE in Grand Rapids, Michigan.

12. Plaintiff has worked pursuant to a written contract since 2015 without blemish on her professional or workplace record.

2

13. Plaintiff had entered into an employment contract on January 19, 2018 with Defendant, giving her a 60/40 split of hourly revenues from the clients she sees, as well as a full array of employee benefits.

14. Plaintiff had also been working towards her doctorate maintaining usually fulltime hours as a clinical therapist.

15. Plaintiff was diagnosed with papillary thyroid carcinoma in February 2019.

16. Papillary thyroid carcinoma is a chronic disease which can impair major body functions.

17. This condition can cause fatigue, pain, among other symptoms, but can also be very curable.

18. Plaintiff informed Defendant employer, BRAINS, by email to the owners of the Defendant, Rochelle Manor, PhD and Michael Wolff, PsyD, ABPdN on February 18, 2019 of her cancer diagnosis.

19. On April 4, 2019, Rochelle Manor, one of the owners of Defendant BRAINS notified Plaintiff that because of her cancer diagnosis, she believed that Plaintiff would not be able to meet her production goals to qualify as a full time therapist, so she was reducing her hours and placing her on part-time status.

20. Defendant employer had unilaterally amended the prior contract on March 11, 2019, without Plaintiff's signature or consent.

21. Plaintiff did not consent to this demotion, and contractual change and refused to sign an addendum to her contract signifying same.

22. Plaintiff advised that she believed she would be able to meet her fulltime productivity quota and goals, regardless of her cancer diagnosis and treatment.

23. Defendants refused to allow Plaintiff to continue to work full-time and began to pay her in

      a 55/45 split of her prior hourly reimbursement, (which had been 60/40) claiming that she could only work part-time due to her "medical issues."

24. Because of this change, Plaintiff also lost all of her fulltime benefits.

25. As a result, Plaintiff has earned less since she told Defendant of her cancer diagnosis.

26. Plaintiff sought information about taking time off pursuant to the Family and Medical Leave Act, and was told that Defendant BRAINS was too small to be covered this law.

27. Plaintiff then filed a formal complaint with the EEOC, and sought a charge.

28. After Plaintiff informed her employer of her filing the complaint with the EEOC, and hired a private attorney, the owners of BRAINS claimed there had been a misunderstanding.

29. The owners, Manor and Wolff, then offered her Family Medical Leave Act (FLMA) forms, and indicated that they would keep paying for her UNUM disability insurance premiums even though they did not have to do so.

30. Plaintiff applied for Short Term Disability, but continued to work.

31. Plaintiff then provided medical documentation from her treating physician's office to Defendants that stated that she should not be subjected to unnecessary administrative meetings and duties (such as court appearances) that raise her cortisol levels (a stress hormone) as that would limit and reduce the effectiveness of treatment.

32. This was her request for a reasonable accommodation to be able to continue working as a therapist but still live with and actively treat her cancer.

33. The Defendant/Employer has consistently refused to reimburse Plaintiff at her normal full time capacity, at her normal split since she informed them of her cancer.

34. Plaintiff has been treating her cancer with various noninvasive treatments, in an effort to

avoid surgery to remove the tumor on her thyroid gland.

35. As of July 2019, the tumor appears to have remained stable.

36. The treatment regimen Plaintiff has followed has required her to take 1-3 hours off a business day for a total of 16 days since her diagnosis.

37. Plaintiff has continued to work as she has a covenant not to compete, and has built up a base of clients, and does not want to be forced to find a new job while treating for cancer.

38. Defendant employer has not been supportive of her, and she fears she will be terminated, but has not been yet.

### COUNT ONE: Violation of the Americans with Disability Act, 42 U.S.C. § 12101; Disability Discrimination

39. Plaintiff incorporates all prior paragraphs as if fully stated herein.

40. Plaintiff at all times was an employee of the Defendant, as defined in 42 U.S.C. § 12111(4).

41. The Defendant was at all relevant times the employer of the Plaintiff within the meaning of 42 U.S.C. § 12111(5) and subject to the prohibitions on the basis of disability contained in the ADA.

42. Plaintiff, is, as was, a qualified individual with a disability within the meaning of 42 U.S.C. § 12111(8).

43. Plaintiff was and is qualified for the job she holds and can perform the essential job functions of her position with or without reasonable accommodations.

44. Plaintiff suffered adverse employment action in the form of a unilateral change in her contract to a part-time status, reducing her pay and removing some of her fulltime benefits.

45. Defendant knew of her cancer diagnosis.

46. The Defendant reduced her pay and benefits based on the cancer diagnosis.

47. Defendant has failed to timely and adequately engage in an interactive process with Plaintiff to determine if accommodation was needed and/or reasonable accommodation which would enable Plaintiff to perform her job duties at her normal pay.

48. The Defendant is liable to the Plaintiff under the ADA for:

   a) Reducing Plaintiff's reimbursement rate,

   b) Elimination of availability of most of her fringe benefits,

   c) Unilaterally modifying her contract to prevent her earning her normal wage.

   d) Failing to afford or allow Plaintiff the use of reasonable accommodations which would enable her to perform the essential functions of her job at the same rate of pay, if any such accommodation was necessary.

   e) Failing to properly and timely engage in an interactive process;

   f) Even if Plaintiff is determined to not suffer from a disability as defined in the ADA, the defendant regards her as disabled, and reduced her pay and took adverse employment action on the basis of such in violation of the ADA.

49. The Defendant's violations of the ADA were done with malice and/or reckless indifference to Plaintiff's rights, thereby subjecting the Defendant to punitive damages, in addition to all other damages available at law.

50. As a direct and proximate result of the Defendant's violations of the ADA, Plaintiff has suffered emotional distress, mental anguish, pain and suffering.

51. As a direct and proximate result of Defendant's violations of the ADA, Plaintiff has suffered economic damages, including a reduction in wages, loss of benefits, back pay, front pay,

6

and any uncovered incurred medical expenses.

52. Plaintiff hereby seeks recovery of all compensatory (past and future economic and non-economic damages) available under law, as well as attorneys' fees and costs incurred in having to investigate, pursue and litigate and prosecute this claim under the ADA.

WHEREFORE the plaintiff respectfully prays for judgment against the defendant for all compensatory damages, punitive damages, exemplary damages, non-economic and economic damages available at law, any and all equitable relief allowed together with costs, interest and attorney fees incurred in having to investigate, pursue, litigate and prosecute the instant action.

## **COUNT TWO: Violation of the of the Michigan Persons with Disabilities Civil Rights Act, M.C.L. § 37.1101, *et seq* Disability Discrimination**

53. Plaintiff incorporates all prior paragraphs as if fully stated herein.

54. Plaintiff at all times was an employee of the Defendant, as defined in M.C.L. §37.1103(h), who disability qualifies as such under M.C.L. § 37.1103(d).

55. The Defendant was at all relevant times the employer of the Plaintiff within the meaning of M.C.L. § 37. 1201(b) and subject to the prohibitions on the basis of disability contained in the Michigan Persons with Disabilities Civil Rights Act. (PWDCRA)

56. Plaintiff, is, as was, a qualified individual with a disability within the meaning of the Michigan Persons with Disabilities Civil Rights Act.

57. Plaintiff was and is qualified for the job she holds and can perform the essential job functions of her position with or without reasonable accommodations.

58. Plaintiff suffered adverse employment action in the form of a unilateral change in her contract to a part-time status, reducing her pay and removing some of her fulltime benefits.

59. Defendant knew of her cancer diagnosis.

60. The Defendant reduced her pay and benefits based on the cancer diagnosis.

61. Defendant has failed to timely and adequately engage in an interactive process with Plaintiff to determine if accommodation was needed and/or reasonable accommodation which would enable Plaintiff to perform her job duties at her normal pay.

62. The Defendant is liable to the Plaintiff under the PWDCRA for:
    a) Reducing Plaintiff's reimbursement rate,
    b) Elimination of availability of most of her fringe benefits,
    c) Unilaterally modifying her contract to prevent her earning her normal wage.
    d) Failing to afford or allow Plaintiff the use of reasonable accommodations which would enable her to perform the essential functions of her job at the same rate of pay, if any such accommodation was necessary.
    e) Failing to properly and timely engage in an interactive process;
    f) Even if Plaintiff is determined to not suffer from a disability as defined in the PWDCRA the defendant regards her as disabled, and reduced her pay and took adverse employment action on the basis of such in violation of the PWDCRA.

63. The Defendant's violations of the PWDCRA were done with malice and/or reckless indifference to Plaintiff's rights, thereby subjecting the Defendant to punitive damages, in addition to all other damages available at law.

64. As a direct and proximate result of the Defendant's violations of the PWDCRA, Plaintiff has suffered emotional distress, mental anguish, pain and suffering.

65. As a direct and proximate result of Defendant's violations of the PWDCRA, Plaintiff has suffered economic damages, including a reduction in wages, loss of benefits, back pay, front pay, and any uncovered incurred medical expenses.

66. Plaintiff hereby seeks recovery of all compensatory (past and future economic and non-economic damages) available under law, as well as attorneys' fees and costs incurred in having to investigate, pursue and litigate and prosecute this claim under the PWDCRA.

   WHEREFORE the plaintiff respectfully prays for judgment against the defendant for all

compensatory damages, punitive damages, exemplary damages, non-economic and economic damages available at law, any and all equitable relief allowed together with costs, interest and attorney fees incurred in having to investigate, pursue, litigate and prosecute the instant action.

                                      Respectfully Submitted,
                                      EARDLEY LAW OFFICES, P.C.
                                      Counsel for Plaintiff

November 20, 2019

                                      */s/Eugenie B. Eardley*__
                                      Eugenie B. Eardley (P48615)
                                      Nicholas F.X. Gumina (P74203)
                                      8 East Bridge Street Suite B
                                      Rockford, MI 49341
                                      (616) 874-2647

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DIANA OSIPSOV,

    Plaintiff,

                            Case No 1:19-CV-

v.                              Hon.

BEHAVIORAL RESOURCES AND INSTITUTE
FOR NEUROPSYCHOLOGICAL SERVICES, PLC,
a/k/a BRAINS,

    Defendant.
_____

Eugenie B. Eardley (P48615)
Nicholas F. X. Gumina (P74203)
Eardley Law Offices, P.C.
Counsel for Plaintiffs
8 East Bridge Street, Suite B
Rockford, MI 49341
(616) 874-2647
genieb@eardleylaw.com
nickg@eardleylaw.com

## JURY DEMAND

    Comes Now the Plaintiff, by and through her attorneys, Eardley Law Offices, P.C., and hereby requests a trial by jury on all counts as outlined above.

                              Respectfully Submitted,
                              EARDLEY LAW OFFICES, P.C.
                              Counsel for Plaintiff

November 20, 2019

                              */s/ Eugenie B. Eardley*
                              Eugenie B. Eardley (P48615)
                              Nicholas F.X. Gumina (P74203)
                              8 East Bridge St, Suite B
                              Rockford, MI   49341
                              (616) 874-2647